PEOPLE v REXFORD

Docket No. 199158. Submitted December 4, 1997, at Grand Rapids. Decided March 3, 1998, at 9:05 A.M. Leave to appeal sought.

Franklin J. Rexford pleaded nolo contendere in the 3B District Court, William L. McManus, J., of impaired driving, second offense, but reserved the right to appeal the denial of a motion to suppress evidence of the results of an April 20, 1996, Breathalyzer test. The defendant had sought suppression on the ground that no test for the accuracy of the Breathalyzer instrument was performed during the calendar week of March 17-23, 1996, and that such failure was a violation of 1984 AACS, R 325.2653(1), which requires that Breathalyzer instruments be verified for accuracy at least once during each calendar week. The St. Joseph Circuit Court, James P. Noecker, J., affirmed the district court's denial of the suppression motion. The defendant appealed by leave granted.

The Court of Appeals *held*:

The purpose of the administrative rule is to ensure the accuracy of Breathalyzer tests. A violation of the testing requirement, such as that which occurred in this case, does not automatically warrant the suppression of evidence of the test results. Suppression is not an appropriate remedy in this case. The error was harmless in view of the fact that only one weekly test was missed and the tests that were performed before and after the defendant's use of the instrument indicated that the instrument was accurate.

Affirmed.

INTOXICATING LIQUORS — DRUNKEN DRIVING — BREATHALYZER INSTRUMENTS — WEEKLY TESTING.

A state police administrative rule requires that a Breathalyzer instrument be verified for accuracy at least once during each calendar week; a violation of this requirement does not, in a prosecution for drunken driving, automatically require the suppression of evidence of the defendant's Breathalyzer test results (1984 AACS, R 325.2653[1]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Jeffrey C. Middleton*, Prose-

cuting Attorney, and *Jeanette Jackson,* Assistant Prosecuting Attorney, for the people.

*Frederick J. Taylor,* for the defendant.

Before: NEFF, P.J., and JANSEN and MARKEY, JJ.

JANSEN, J. Defendant appeals by leave granted from an October 23, 1996, opinion and order of the circuit court affirming the district court's July 22, 1996, ruling that Breathalyzer results were admissible against him. We affirm the ruling of the circuit court.

On April 20, 1996, defendant was arrested for drunken driving after submitting to a Breathalyzer test. He was charged alternatively with the offenses of operating with an unlawful blood alcohol level or operating under the influence as a second offender. On June 11, 1996, defendant pleaded nolo contendere to a reduced charge of impaired driving, second offense. To establish a factual basis for the plea, the district court relied on a police report stating that defendant was stopped for speeding and a test showed a blood alcohol level of 0.18. At the time of the plea, defendant also challenged the admission of the result of his Breathalyzer tests, and he reserved the right to have his motion heard and to appeal a denial of that motion. Defendant established his second-offender status by admitting that he had a previous conviction.

At sentencing on July 22, 1996, the district court first ruled on defendant's motion to suppress the evidence of the Breathalyzer tests. Defendant argued that the failure of the police to submit the Breathalyzer apparatus to weekly testing as mandated by the administrative rules required suppression of

the test results. 1984 AACS, R 325.2653(1) (hereafter referred to as Rule 3[1]) requires that Breathalyzer instruments be verified for accuracy at least once during each calendar week. Defendant contended that a review of the Breathalyzer logs revealed a failure to verify for accuracy for the calendar week of March 17, 1996, (Sunday) through March 23, 1996 (Saturday). Because it was undisputed that one simulator test was not done at least once each calendar week before defendant's test, defendant argued that the Breathalyzer results had to be suppressed. The prosecutor, on the other hand, argued that the omission of the weekly test was too remote in time and that the intervening simulator tests indicated the reliability of the apparatus.

The district court denied defendant's motion to suppress, ruling that the period of thirteen days between March 12 and March 25, 1996 constituted a calendar week. The Breathalyzer logs indicated that a test had been performed on March 12, 1996, (Tuesday) and on March 25, 1996 (Monday). Defendant appealed to the circuit court. The circuit court affirmed the ruling of the district court, but for a different reason. The circuit court rejected the reasoning of the district court that the thirteen-day interval in this case constituted a calendar week, but affirmed the ruling to deny defendant's motion on the basis that the failure to test the Breathalyzer apparatus during the calendar week of March 17 to March 23, 1996, did not render the accuracy of the test "sufficiently questionable as to preclude the test results from being admitted into evidence."

In an unpublished order entered December 26, 1996, this Court granted defendant's application for

leave to appeal. The sole issue on appeal is whether the circuit court erred in ruling that the results of the Breathalyzer tests were admissible when the apparatus had not been verified for accuracy during the period of March 17 to March 23, 1996, as required by the administrative rule. We affirm the decision of the circuit court and hold that suppression of the results of the Breathalyzer tests is not required in this case.

The Department of State Police Administrative Rules regarding Breathalyzer tests are promulgated pursuant to MCL 257.625a(6)(g); MSA 9.2325(1)(6)(g), which provides that the state police shall promulgate uniform rules pursuant to the Administrative Procedures Act, MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*, for the administration of chemical tests. The Department of State Police is authorized to promulgate rules for the administration of chemical tests to measure blood alcohol content in drunken driving prosecutions. In this case, the administrative rule in question, Rule 3(1), states in relevant part:

> An evidential breath alcohol test instrument shall be verified for accuracy at least once during each calendar week, or more frequently as the department may require . . . .

In addressing the issue on appeal, it is necessary to begin by considering the meaning of "calendar week" in the context of Rule 3(1).

Construction of administrative rules is governed by the principles of statutory construction. *People v Tipolt*, 198 Mich App 44, 46; 497 NW2d 198 (1993). The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Shallal v Catholic Social Services of Wayne*

*Co*, 455 Mich 604, 611; 566 NW2d 571 (1997). The first step in discerning intent is to examine the language of the statute itself. *Id.* The language is to be read according to its ordinary and generally accepted meaning. *Id.* Judicial construction of a statute is authorized only where it lends itself to more than one interpretation. *Id.*

Although the term "calendar week" is not defined in the administrative rule itself, giving the term its ordinary and generally accepted meaning, and relying on past case law, we read "calendar week" to mean a seven-day period from Sunday through Saturday. *Random House Webster's College Dictionary* (1995) defines week as "a period of seven successive days, usu[ally] understood as beginning with Sunday and ending with Saturday." Case law also supports the interpretation that a calendar week is a seven-day period from Sunday through Saturday. In *Niles Twp v Berrien Co*, 5 Mich App 240, 243; 146 NW2d 105 (1966), this Court held that a statute requiring notice by publication for at least three weeks immediately preceding the presentation of an annexation petition meant that notice must be published at least once during each of the three calendar weeks—Sunday through Saturday—immediately preceding the calendar week of the hearing. In *Chrysler Corp v Washington*, 52 Mich App 229, 233; 217 NW2d 66 (1974), this Court, in interpreting a statute for back-to-work benefits during the period of unemployment, stated that the term "week" was defined in MCL 421.50; MSA 17.554, which provided that "week" means a calendar week ending at midnight Saturday.

We also note at this juncture that a review of the evidential breath-testing log reveals that the state

police, with the exception of the calendar week March 17 (Sunday) through March 23 (Saturday) sought to comply with Rule 3(1) by testing the apparatus at least once each calendar week (Sunday through Saturday), from January 1996 to July 1996. Thus, the department's own practice confirms its understanding of "calendar week" to mean a period of seven days beginning with Sunday and ending on Saturday.

In this case, a test had been performed on March 12, 1996 (Tuesday) and on March 25, 1996 (Monday). It is undisputed that no test was performed during the calendar week of March 17 (Sunday) through March 23 (Saturday). Under these circumstances, and giving the term "calendar week" its generally accepted and ordinary meaning, we agree with the circuit court that the district court erred in holding that there was no violation of Rule 3(1) on the basis that thirteen days is a calendar week. Although compliance with Rule 3(1) would permit two tests to be performed as long as thirteen days apart, such a possibility does not alter the fact that a calendar week constitutes a seven-day period running from Sunday through Saturday. The tests must still be performed at least once during *each* calendar week under Rule 3(1).

Given that the failure to test the Breathalyzer apparatus between March 12 and March 25, 1996, constitutes a violation of Rule 3(1), defendant argues that suppression of the Breathalyzer test results is required pursuant to *People v Willis*, 180 Mich App 31; 446 NW2d 562 (1989). In *Willis*, which involved two companion cases, the issue was the appropriate remedy for failure to comply with 1984 AACS, R 325.2655, which required the administration of at

least two breath tests, with the second test confirming the results of the first, and the administration of a
third test when the variance between the two tests
was greater than permitted under the rule. The
administrative rule also required that a person to
whom the test was administered be observed for fifteen minutes before the collection of the breath specimen, during which time the person cannot smoke,
regurgitate, or place anything in the person's mouth
except the mouthpiece.

Importantly, this Court stated the following in *Willis, supra,* pp 35-36:

> While the exclusion of evidence is not necessarily the
> appropriate remedy for every violation of an administrative
> rule, we do believe it to be the appropriate remedy in the
> context of these cases. As this Court discussed in *People v
> Krulikowski,* 60 Mich App 28; 230 NW2d 290 (1975), it is
> not necessary to establish that the Breathalyzer method of
> breath analysis is generally accepted as reliable by the sci
> entific community, but it remains necessary to establish
> that the specific administration of the Breathalyzer test in a
> particular case was done with accurate equipment while
> employing the proper procedure. *Id.* at 31-33. Moreover,
> establishing this foundation of accuracy is a prerequisite to
> admitting the results of the test. *Id.;* see also *People v
> Schwab,* 173 Mich App 101, 103; 433 NW2d 824 (1988). A
> reading of the administrative rules with respect to the
> administration of Breathalyzer tests indicates that their pur
> pose is to ensure the accuracy of those tests. Accordingly,
> we hold that, where the administrative rules concerning the
> administration of Breathalyzer tests have not been complied
> with, the accuracy of those tests is sufficiently questionable
> as to preclude the test results from being admitted into
> evidence.

We disagree with defendant's contention that there
is a bright-line rule of automatic suppression of evi-

dence where an administrative rule has not been complied with because this Court in *Willis* specifically noted that the exclusion of evidence is not necessarily the appropriate remedy for every violation of an administrative rule. Following the decision in *Willis*, this Court has further stated that the exclusion of evidence is not necessarily the appropriate remedy for every violation of an administrative rule. *Tipolt, supra*, p 46; *People v Hurn*, 205 Mich App 618, 620; 518 NW2d 502 (1994). Moreover, because this Court has noted that the purpose of the administrative rules with respect to the administration of Breathalyzer tests is to ensure the accuracy of those tests, *Willis, supra*, p 35; *Tipolt, supra*, p 46; *People v Boughner*, 209 Mich App 397, 398; 531 NW2d 746 (1995), there is nothing to indicate that the Breathalyzer test results in this case were in any way inaccurate. Indeed, there was a repeated showing of accuracy of the apparatus by the tests over several months, including the four weeks leading up to defendant's tests, as well as after his tests.

Accordingly, we do not believe that suppression of the results of the Breathalyzer tests is an appropriate remedy in this case even though there was a technical violation of Rule 3(1) where the apparatus was not tested during the calendar week of March 17-23, 1996. The error here is clearly harmless because there is no showing of inaccuracy of the apparatus or of the Breathalyzer test results where only one test was missed in a six-month period and the tests that were performed showed the apparatus to be accurate. See, e.g., *Tipolt, supra*, p 47. Thus, the purpose of the administrative rule, to ensure the accuracy of the Breathalyzer tests, has been met in this case.

Moreover, as an alternative analysis, the suppression rule set forth in *Willis*, is not applicable because this Court in *Willis, supra,* pp 35-36, stated that where the administrative rules concerning the *administration* of Breathalyzer tests have not been complied with, the accuracy of those tests is sufficiently questionable as to preclude the test results from being admitted into evidence. Testing the apparatus on a weekly basis does not concern the administration of the Breathalyzer test, but rather governs equipment maintenance and accuracy. As noted by the prosecutor, the failure to comply with Rule 3(1) does not concern the administration of the Breathalyzer tests so as to sufficiently call into question the accuracy of the test. Therefore, violation of Rule 3(1) does not warrant suppression of the evidence of the Breathalyzer tests.[1]

The circuit court's order affirming defendant's conviction and denying defendant's motion to suppress the Breathalyzer test results is affirmed.

---

[1] We note that the failure to comply with Rule 3(1) was relevant to only the weight of the evidence, not its admissibility. Thus, a defendant could still attack the Breathalyzer tests by noting the fact that the apparatus had not been tested on a weekly basis. The trier of fact could then determine the weight of the evidence of the Breathalyzer tests.