No. 2--07--0277     Filed: 9-4-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 06--CF--1920 |
| THEODORE CARPENTER, | ) ) | Honorable Perry R. Thompson, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE BOWMAN delivered the opinion of the court:

Defendant, Theodore Carpenter, submitted to a breath test and was subsequently charged with multiple offenses related to driving under the influence (DUI). Also, his driving privileges were summarily suspended. Defendant filed a petition to rescind the summary suspension and a motion in limine to suppress the breath test results, arguing that notice of the "temporarily approved" breath test device used on him was not "available to the public" under section 1286.210(c) of Title 20 of the Administrative Code (20 Ill. Adm. Code §1286.210(c), amended at 31 Ill. Reg. 7305, eff. May 1, 2007). Because the temporarily approved device was not listed on the Illinois State Police Web site, the trial court determined that the public did not have the notice required under section 1286.210(c) of Title 20 of the Administrative Code, and it granted defendant the relief he sought. We disagree with the trial court's interpretation. Therefore, we reverse its decision and remand the cause.

I. BACKGROUND

On July 9, 2006, defendant was arrested by a Glendale Heights police officer for driving under the influence of alcohol. During the stop, he submitted to a breath test on a device known as the EC-IR II, which revealed an alcohol concentration of 0.123. Defendant was subsequently charged by complaint with multiple counts. Count I alleged that he was driving in the wrong lane while under the influence of alcohol and while his license was suspended (625 ILCS 5/11--501(c--1)(1) (West 2006)). Count II alleged that the alcohol concentration in his blood was 0.08 or over (625 ILCS 5/11--501(a)(1) (West 2006)). Count III alleged that he was driving while his license was suspended (625 ILCS 5/6--303(a) (West 2006)), and count IV alleged that he was driving in the wrong lane (625 ILCS 5/11--701 (West 2006)).

After his driving privileges were summarily suspended, defendant filed a petition to rescind the summary suspension on July 12, 2006. In the meantime, the grand jury returned an indictment charging defendant with two counts of aggravated DUI.

Two documents in the record are important for purposes of this appeal. The first document is a memorandum on Illinois State Police letterhead, dated May 12, 2006, and signed by Director's Designee Nancy Easum. The memorandum, entitled "Evidentiary Breath Testing Temporary Approval List," stated as follows:

"Upon review of the National Highway Traffic Safety Administration's (NHTSA's) approval of the Intoximeters EC-IR II breath testing equipment; and

After conducting a program suitability evaluation upon the Intoximeters EC-IR II breath testing instrument manufactured by Intoximeters, Inc., and

WHEREFORE, the Intoximeters EC-IR II breath testing instrument manufactured by Intoximeters, Inc., has been placed on the listing of approved breath testing equipment by NHTSA; and

WHEREFORE, the program suitability evaluation conducted by the Alcohol and Substance Testing Section (A&ST) of the Illinois State Police showed the Intoximeters EC-IR II breath testing instrument manufactured by Intoximeters, Inc., is compatible with the current evidentiary breath testing program administered by the Illinois State Police.

NOW BE IT THEREFORE RESOLVED, the Intoximeters EC-IR II shall be placed on the list of evidential breath testing instruments temporarily approved for use as an evidential device; said approval to be effective May 15, 2006, and expire 18 months from date of approval."

The second document is the affidavit of Director's Designee Easum, dated September 5, 2006. In her affidavit, Easum stated that she worked as the supervisor of the alcohol and substance testing section, and her job responsibilities included managing and overseeing the chemical testing program and the breath analysis technicians employed by the Illinois State Police for the performance of the breath certification program. According to her affidavit, the EC-IR II device was approved for use as an evidential breath testing device on May 15, 2006, as reflected in the May 12 memorandum. Further, her affidavit stated that "any member of the public may obtain a copy of this Evidentiary Breath Testing Temporary Approval List by making an oral or written request for the document from the Alcohol and Substance Testing Section."

The court conducted a rescission hearing on August 21, 2006. Defendant challenged the breath test results in light of the fact that the EC-IR II device was not listed as an approved device

on the Illinois State Police Web site. The State responded that, under section 1286.210 of Title 20 of the Administrative Code, the Department of State Police may temporarily approve additional evidential instrumentation after conducting a program-suitability evaluation. The court agreed that the Administrative Code allows "temporary changes," but asked if the temporary change, meaning the EC-IR II device, was posted on the Illinois State Police Web site. The court noted that section 1286.210 states that the list of temporarily approved evidentiary instruments shall be "available to the public." The State conceded that the EC-IR II was not posted on the Web site. Nevertheless, the State argued that this information was available to the public in that anyone could call the Department of State Police, ask to see the temporary list, and then receive the list. According to the State, making the temporary list "available to the public" did not require that it be posted on the Web site. The court disagreed and granted defendant's petition to rescind. In particular, the court found that the EC-IR II was not a valid or approved instrument because the Department of State Police failed to post approval on its Web site and "make it available to the public."

On September 8, 2006, the State moved to reconsider the trial court's finding regarding the EC-IR II device. According to the State, section 1286.210 of Title 20 of the Administrative Code does not require a specific type of public notice or public posting of the temporary approval list.

On February 15, 2007, defendant filed a motion in limine to suppress the results of the breath test, and the next day defendant filed a corrected in limine motion.[1] A hearing on the State's motion to reconsider and defendant's motion in limine occurred on March 1, 2007. Based on its previous ruling that the Department of State Police failed to provide public notice of the temporary approval

---

[1]Both of defendant's motions in limine state the wrong date and the wrong police department that made the arrest.

of the EC-IR II device, the court denied the State's motion to reconsider and granted defendant's motion in limine. The trial court thus barred the breath test results for defendant's DUI trial.

The State filed a certificate of substantial impairment and appealed.

## II. ANALYSIS

Section 11--501.2 of the Illinois Vehicle Code (625 ILCS 5/11--501.2 (West 2006)) governs the admissibility of breath test results in DUI prosecutions. It states that the Director of State Police is authorized to certify the accuracy of breath testing equipment and to prescribe regulations as necessary to implement the section. See 625 ILCS 5/11--501.2 (West 2006). The State's argument is premised on a particular regulation, section 1286.210 of Title 20 of the Administrative Code, which contains a list of the approved instruments for obtaining breath analysis readings. Subsection (a) of section 1286.210 lists four instruments that have been approved by the Department of State Police, and this list is posted on the Illinois State Police Web site. Besides the approved list, subsection (c) allows the Department of State Police to temporarily approve additional breath test devices, such as the one used in this case, the EC-IR II device. It is subsection (c) that is at issue here, and we set it forth in its entirety:

> "(c) The Department may temporarily approve additional evidential instrumentation from NHTSA's list after conducting a program suitability evaluation. The Department shall maintain a list of evidentiary instruments temporarily approved for breath testing in addition to those provided in subsection (a). Evidentiary instruments may be temporarily approved for a maximum period of 18 months. The list of temporarily approved evidentiary instruments, if any, <u>shall be available to the public</u>." (Emphasis added.) 20 Ill. Adm. Code §1286.210(c), amended at 31 Ill. Reg. 7305, eff. May 1, 2007.

The crux of this case is what is meant by the language "available to the public." According to the State, the trial court erred by interpreting this phrase in such a "rigid and narrow" and "hyper technical" fashion, and there is no requirement that notice be posted on the Illinois State Police Web site. Naturally, defendant agrees with the trial court that the Department failed to make the temporary approval of the EC-IR II device "available to the public."

"Administrative rules and regulations have the force of law and must be construed under the same standards that govern the construction of statutes." People v. Wilhelm, 346 Ill. App. 3d 206, 208 (2004). The primary objective of interpreting a regulation is to ascertain and give effect to the drafters' intent. Wilhelm, 346 Ill. App. 3d at 208. The most reliable indicator of regulatory intent is the language of the regulation itself (People v. Hanna, 207 Ill. 2d 486, 497-98 (2003)), and clear and unambiguous terms are to be given their plain and ordinary meaning (People v. Bonutti, 338 Ill. App. 3d 333, 341 (2003)). "Regulatory intent must be ascertained from a consideration of the entire scheme, its nature, its object, and the consequences resulting from different constructions." Wilhelm, 346 Ill. App. 3d at 208. Furthermore, a court should not construe a regulation in a manner that would lead to consequences that are absurd, inconvenient, or unjust. Wilhelm, 346 Ill. App. 3d at 208. Regulatory construction is a question of law that we review de novo. People v. Jones, 223 Ill. 2d 569, 580 (2006).

This question of construction occurs within the context of defendant's petition to rescind and motion in limine. Generally, a trial court's decision to grant a motion in limine will not be reversed on appeal unless the trial court abused its discretion. People v. Claudio, 371 Ill. App. 3d 1067, 1069 (2007). Where the issue on appeal is purely a question of law, however, our review is de novo. Claudio, 371 Ill. App. 3d at 1069. The same is true regarding the trial court's decision granting

defendant's petition to rescind the summary suspension of his license: our review is de novo. See People v. Aleliunaite, 379 Ill. App. 3d 975, 980 (2008) ("Although we generally reverse a trial court's ruling on a petition to rescind a defendant's summary suspension only if that finding is against the manifest weight of the evidence [citation], our review here is de novo, as the facts are not in dispute" and the issue presented is a question of law).

As previously mentioned, the regulation at issue states that the list of temporarily approved evidentiary instruments "shall be available to the public." In ruling that notice of the temporarily approved EC-IR II device was not "available to the public," the trial court focused on the fact that the EC-IR II device was not listed on the Illinois State Police Web site. However, we agree with the State that this was not required under the plain language of the regulation. The word "available" means "accessible or may be obtained." Webster's Third New International Dictionary 150 (1986); see Price v. Philip Morris, Inc., 219 Ill. 2d 182, 242 (2005) (when interpreting statutes, we give undefined words their plain and ordinary meaning, and it is entirely appropriate to employ the dictionary as a source to ascertain the meaning of undefined terms). "Public" is defined as "accessible to or shared by all members of the community." Webster's Third New International Dictionary 1836 (1986). As the State points out, there is no requirement that the list of temporarily approved instruments be posted on the Illinois State Police Web site or made available to the public in a certain fashion. See Bonutti, 338 Ill. App. 3d at 341 (where statutory terms are clear and unambiguous, the plain language as written must be given effect, without reading into it exceptions, limitations, or conditions that the legislature did not express).

Had the drafters intended that the temporary approval list be available to the public in a particular fashion, the language would reflect such a manner or means of compliance. For example,

section 2175.135(a) of Title 2 of the Administrative Code prescribes a specific means of making information available to the public: minutes from meetings of the Pollution Control Board "will be available to the public at the Clerk's Office and *** on the Board's Web site for at least 60 days." 2 Ill. Adm. Code §2175.135(a), amended at 30 Ill. Reg. 14990, eff. August 29, 2006; see also 92 Ill. Adm. Code §2520.110 (2006) ("This Part [of State Toll Highway Rules] shall be available to the general public at the main administrative office of the Authority during regular business hours and on the Authority's web site"). Unlike other provisions of the Administrative Code that specify how the information shall be available to the public, section 1286.210 does not designate how the temporary list shall be available to the public. Therefore, the trial court erred by concluding that the Department's failure to post the temporary list on its Web site constituted a lack of compliance with the regulation.

Although there is no Illinois case on point, we believe that this result is consistent with our supreme court's decision in Hanna, which involved a different section of the Administrative Code pertaining to breath test devices. The provision at issue stated that breath analysis instruments "will be tested and approved by the Department in accordance with but not limited to the Standards for Devices to Measure Breath Alcohol promulgated by the National Highway Traffic Safety Administration." (Emphasis added.) 77 Ill. Adm. Code §510.40(c) (1996); Hanna, 207 Ill. 2d at 496. The defendants argued that, under the plain language of that section, the Department was required to perform the same tests that were conducted by the NHTSA, and three tests required for NHTSA approval had not been conducted on the breath test devices at issue. Hanna, 207 Ill. 2d at 492, 496. Though the trial court and the appellate court found this argument convincing, the supreme court did not. In Hanna, the technical supervisor of the breath alcohol program for the State

Police testified that the Department was not required to perform such tests, because they were not relevant to the way the devices were used in Illinois. Hanna, 207 Ill. 2d at 493. In holding that the Department was not required to perform the three tests, the supreme court criticized the lower courts for failing to acknowledge or consider the "real-world activity--the use of breath testing devices in Illinois--that section 510.40(c) was designed to regulate." Hanna, 207 Ill. 2d at 503. According to the supreme court, interpreting section 510.40(c) to require the Department to conduct the three tests, as the appellate court did, produced "decidedly absurd results." Hanna, 207 Ill. 2d at 503.

As in Hanna, we believe that suppressing the breath test results in this case would lead to an unjust result. We note that in Hanna, 207 Ill. 2d at 501, the supreme court criticized the appellate court's failure to consider "the impact of [the supervisor's] testimony upon the proper interpretation" of the regulation. In this case, we have the affidavit of Easum, the supervisor of the alcohol and substance testing section, stating that "any member of the public may obtain a copy of this Evidentiary Breath Testing Temporary Approval List by making an oral or written request for the document from the Alcohol and Substance Testing Section." The State similarly argued before the trial court that any member of the public could call the Department, ask to see the temporary list, and receive a copy of the list. Given the plain, ordinary meaning of the terms, we believe that the temporary list was "available to the public," in that it was "accessible" or able to "be obtained" by "all members of the community."

Also, our conclusion is in harmony with the purpose of section 1286.210, which is to ensure that breath test devices are approved by the Department before their use. See People v. Rigsby, No. 5--06--0639, slip op. at 4 (June 24, 2008) (in order to raise the rebuttable presumption that a breath test device was accurate, one of the four conditions that must be met is that the device was

approved). Here, there is no question that the EC-IR II device was temporarily approved at the time it was used in July 2006. Moreover, on May 1, 2007, the EC-IR II device was added to the list of approved instruments in subsection (a) of section 1286.210 of Title 20 of the Administrative Code. Because defendant does not challenge the accuracy of the device, to suppress the breath test results would ignore the purpose of the regulation, which is to require testing with a device approved by the Department.

Although there is no out-of-state case directly on point, we note that other jurisdictions confronted with alleged violations of administrative regulations have focused primarily on whether the test results were accurate and reliable. In People v. Rexford, 228 Mich. App. 371, 579 N.W.2d 111 (1998), for instance, a technical violation of an administrative rule did not require suppression of the defendant's breath test results. In that case, despite an administrative rule requiring the testing of breath test devices at least once during every calendar week, one test was missed during a six-month period. Rexford, 228 Mich. App. at 373, 378, 579 N.W.2d at 113, 115. The reviewing court disagreed with the defendant's contention that there was a "bright-line rule of automatic suppression" of evidence where an administrative rule had not been complied with, and there was nothing to indicate that the test results were inaccurate. Rexford, 228 Mich. App. at 377, 579 N.W.2d at 115. In another Michigan case, People v. Tipolt, 198 Mich. App. 44, 497 N.W.2d 198 (1993), the trial court granted the defendant's motion to suppress breath test results because the device was not inspected within 120 days of its last inspection date, even though the device had been taken out of service. Tipolt, 198 Mich. App. at 45, 497 N.W.2d at 199. The reviewing court reasoned that to "agree with the trial court would lead to absurd and unjust results," and it held that the 120-day obligation applied only to instruments that were in service. Tipolt, 198 Mich. App. at 47, 497

N.W.2d at 200. Significant to the court was the fact that the device used to test the defendant had been verified for accuracy less than two weeks before being used on the defendant and had been tested weekly for a couple of months thereafter. Tipolt, 198 Mich. App. at 47, 497 N.W.2d at 200. Finally, in City of Salem v. Noble, 45 Or. App. 453, 608 P.2d 603 (1980), the trial court suppressed breath test results in light of the defendants' failure to breathe into the machine for 12 seconds. The reviewing court reversed based on a regulatory amendment, which retroactively eliminated the 12-second requirement, and because the discrepancy between the regulation and the administration of the breath test did not affect the accuracy or reliability of the test results. Noble, 45 Or. App. at 457-58, 608 P.2d at 605-06. The court stated that "[m]ore mischief would result from a suppression of valid test results under these circumstances than any ill effect from retroactive elimination of an operational requirement that is irrelevant to the accuracy of the breath tests." Noble, 45 Or. App. at 458, 608 P.2d at 606.

Consistent with Hanna and other jurisdictions, we must construe section 1286.210 "within the real-world activity" that the section was intended to regulate. See Hanna, 207 Ill. 2d at 500. By virtue of subsection (c), the drafters have seen fit to allow the Department to temporarily approve breath test devices in addition to the ones listed in subsection (a) after conducting a program-suitability evaluation. In this case, not only was the EC-IR II device temporarily approved, but approval was available to the public within the meaning of section 1286.210(c).

We turn now to defendant's remaining arguments in support of the trial court's decision. First, defendant argues that the memorandum temporarily approving the EC-IR II device was not signed by the Director of the State Police as required by section 11--501.2 of the Illinois Vehicle Code (625 ILCS 5/11--501.2 (West 2006). Section 11--501.2 states that "[t]he Director of State

Police is authorized to approve satisfactory techniques or methods *** and to certify the accuracy of breath testing equipment." 625 ILCS 5/11--501.2 (West 2006). Based on this language, defendant argues that only the Director, as opposed to the Director's Designee, is authorized to approve specific breath testing devices. In other words, the memorandum signed by Director's Designee Easum fails to comply with the approval procedure required in section 11--501.2.

We reject this argument, for obvious reasons. Although the Illinois Vehicle Code does not define "Director," the appellate court has interpreted "Director" to refer to the named director of a department <u>or his designee</u>. <u>Welch v. Hoeh</u>, 314 Ill. App. 3d 1027, 1034 (2000). It is common practice for an agency official to delegate specific responsibilities to a subordinate. <u>Welch</u>, 314 Ill. App. 3d at 1034. Moreover, the Department, in its regulations, states that "Director" means the "Director of State Police or the Director's designee." 20 Ill. Adm. Code §1200.20, adopted at 24 Ill. Reg. 6982, eff. April 21, 2000. Because defendant cites to nothing in the Illinois Vehicle Code or the Administrative Code prohibiting Easum from signing on behalf of the Director as his designee, his argument fails.

Second, defendant argues that the memorandum temporarily approving the EC-IR II device served as a "modification" to section 1286.210 of Title 20 of the Administrative Code and that this modification violated section 5--10 of the Administrative Procedure Act (5 ILCS 100/5--10 (West 2006)), because it was not published in the Illinois Register or filed with the Secretary of State and because it was not made available for public inspection. Essentially, defendant argues that the "modification" is actually a "rule" subject to the requirements set forth in the Administrative Procedure Act. See 5 ILCS 100/5--10(c) (West 2006) ("No agency rule is valid or effective against

any person or party, nor may be invoked by the agency for any purpose, until it has been made available for public inspection and filed with the Secretary of State as required by this Act").

Defendant's argument is a circular one at best. The temporary approval of the EC-IR II device does not constitute an independent rule within the meaning of section 1--70 of the Administrative Procedure Act. See 5 ILCS 100/1--70 (West 2006) (" 'Rule' means each agency statement of general applicability that implements, applies, interprets, or prescribes law or policy"). Rather, it is an authorized application of subsection (c) of section 1286.210 of Title 20 of the Administrative Code, which allows the Department to temporarily approve evidential instrumentation in addition to those provided in subsection (a). In other words, the temporary approval of the EC-IR II device does not constitute a new rule but is an implementation of an existing regulation. Otherwise, under defendant's reasoning, the temporary approval of each breath test device would constitute a "rule" subject to the requirements of the Administrative Procedure Act. The authority to "temporarily approve" the EC-IR II device derived from section 1286.210(c) of Title 20 of the Administrative Code. Accordingly, the memorandum evidencing such temporary approval did not constitute a "rule" within the meaning of the Administrative Procedure Act.

Defendant's final argument is again premised on the Administrative Procedure Act. According to defendant, because section 1286.210(c) allows for "temporary amendments" of the regulation for a period of 18 months, it violates section 5--45(c) of the Administrative Procedure Act, which states that an "emergency rule may be effective for a period of not longer than 150 days." 5 ILCS 100/5--45(c) (West 2006). Where an agency determines that an "emergency" exists, it may adopt emergency rules for a period of no more than 150 days without following the general rulemaking provision, which sets forth the requirements of public notice and a minimum time frame

for formal hearings and comments on the proposed rules. <u>County of Du Page v. Illinois Labor Relations Board</u>, 358 Ill. App. 3d 174, 179-80 (2005). The Administrative Procedure Act defines "emergency" as the "existence of any situation that any agency finds reasonably constitutes a threat to the public interest, safety, or welfare." 5 ILCS 100/5--45 (West 2006). Defendant's argument ignores the fact that temporary approval under section 1286.210(c) is not an emergency rule. Therefore, it cannot run afoul of the 150-day limitation for emergency rulemaking.

### III. CONCLUSION

For the foregoing reasons, the temporary approval of the EC-IR II device was available to the public within the meaning of section 1286.210(c) of Title 20 of the Administrative Code. As a result, the trial court erred by granting defendant's petition to rescind and motion <u>in limine</u> to suppress the breath test results. The judgment of the Du Page County circuit court is reversed and this case is remanded.

Reversed and remanded.

HUTCHINSON and BURKE, JJ., concur.