*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

FOR PUBLICATION
September 10, 2020

v

No. 350391
Oakland Circuit Court
LC No. 2019-175232-AR

ALTON FONTENOT, JR.,

        Defendant-Appellee.

Before: MURRAY, C.J., and RONAYNE KRAUSE and TUKEL, JJ.

RONAYNE KRAUSE, J. *(dissenting)*

I respectfully dissent. The evidence in this case demonstrates that the specific records at issue are unreliable, and therefore not admissible under MRE 803(6), irrespective of whether the records are considered "testimonial." Furthermore, the nature of the records at issue here is fundamentally different from the nature of the records at issue in the case law upon which the majority relies for the conclusion that they are not "testimonial." I would therefore affirm the lower courts.

As the majority explains, MRE 803(6) provides an exception to the hearsay evidence rule for "records of regularly conducted activity" as follows:

> A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with a rule promulgated by the supreme court or a statute permitting certification, *unless the source of information or the*

-1-

> *method or circumstances of preparation indicate lack of trustworthiness.*[1]  The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.  [(Emphasis added.)]

"The business records exception is based on the inherent trustworthiness of business records.  But that trustworthiness is undermined and can no longer be presumed when the records are prepared in anticipation of litigation." *People v Jambor (On Remand)*, 273 Mich App 477, 482; 729 NW2d 569 (2007).  Importantly, however, nowhere in MRE 803(6) is there any limitation on or specification of how or why a record might lack trustworthiness.

Under the circumstances, "the source of information or the method or circumstances of preparation" clearly *does* "indicate a lack of trustworthiness."  Defendant has provided evidence that Marvin Gier, the Class IV operator who conducted the 120-day tests on the DataMaster, testified in another proceeding that he had used an expired test sample kit on one occasion, and he had no ability to prove the test kits he used relevant to that proceeding were not also expired.  By necessary implication, Gier apparently only learned he made the mistake in the prior case because it was brought out on cross-examination.[2]  Thus, the testing procedure is clearly fallible and is not self-correcting.  This is critical, because the testing logs are not merely a bureaucratic record that a routine was followed.  Rather, the logs are substantive evidence establishing the reliability of any particular alcohol-level test performed by a DataMaster machine in specific cases.  In turn, those individual alcohol-level tests carry enormous probative weight.  Indeed, in many cases, including felonies, the tests are outright conclusive and effectively unchallengeable—even if, as here, there is a danger that they might be wrong due to an improperly calibrated piece of equipment that is not itself capable of being examined.  The evidence shows that the 120-day test logs may not, in fact, be trustworthy *for the purpose for which they are introduced into evidence*: to show that the DataMaster machines were properly tested therefore provide reliable evidence of a defendant's blood alcohol level.

Importantly, the testing logs are not *merely* kept pursuant to a stray piece of bureaucratic red tape, to be filed away somewhere and usually forgotten.  It begs the question simply to say that they are kept because a rule requires them to be kept.  The purpose of the administrative rules pertaining to blood alcohol level breath tests is to ensure that the tests are accurate, and failure to comply with the rules therefore renders the accuracy of those tests questionable.  *People v Boughner*, 209 Mich App 397, 338-339; 531 NW2d 746 (1995).  Our Supreme Court has overruled older case law holding that noncompliance with breath test administrative rules or statutes *per se* precludes the admissibility of those tests.  See *People v Anstey*, 467 Mich 436, 446-449, 447 n 9; 719 NW2d 579 (2006).  However, noncompliance with the administrative rules or statute does

---

[1] As a consequence of this qualifying clause, I respectfully disagree with the majority that the analysis under MRE 803(6) considers only the general kind of document at issue and disregards trustworthiness concerns pertaining to the specific document at issue.

[2] Although the implications of Gier's testimony are easily deduced on this occasion, the better practice would have been to also provide Gier's testimony from the prior case.

undermine the probative value of those tests. *People v Wager*, 460 Mich 118, 126; 594 NW2d 487 (1999). Importantly, "the reliability of the testing device" remains a prerequisite to the admissibility of breath test results. *People v Kozar*, 54 Mich App 503, 509 n 2; 221 NW2d 170 (1974), overruled in part on other grounds by *Wager*, 460 Mich at 122-124.[3] In other words, although the testing logs are technically kept pursuant to a regulatory rule, the reason for the regulatory rule is *for the purpose of using the tests in prosecutions*. It cannot be overemphasized that the 120-day test logs do not simply show that a test was administered, but rather that a test was *properly* administered, which in turn is of direct relevance to the reliability and thus admissibility of the test.[4]

In contrast, the certificates of mailing at issue in *People v Nunley*, 491 Mich 686; 821 NW2d 642 (2012), were mechanistically generated purely for the purpose of showing the bare fact that a mailing had occurred. *Id*. at 690, 695-696. In other words, the certificates in *Nunley* contrast drastically with the logs here, which exist to certify that a potentially-fallible human properly performed a complex operation calling for training and expertise. At the other end of the spectrum, the certificates at issue in *Melendez-Diaz v Massachusetts*, 557 US 305; 129 S Ct 2527; 174 L Ed 2d 314 (2009), were actually literal affidavits prepared by persons who conducted sophisticated analyses for the sole and direct purpose of criminal proceedings against particular individuals. *Id*. at 307, 310-311. Those certificates again contrast with the logs in this case, but in the opposite direction, because they were prepared to directly establish facts at issue in a specific prosecution. Thus, the 120-day testing logs here seem to occupy an intermediate position not directly addressed in any binding case law. However, because the logs are clearly kept for the *substantive* purpose of litigation, and because they offer one of the very limited avenues by which a defendant might be able to test the forensic evidence against him, I would find that the logs should be considered testimonial in nature. See *Nunley*, 491 Mich at 706-707.

Nevertheless, I recognize that, as the majority observes, because the logs "are necessarily created *before* the commission of any crime that they may later be used to help prove," our Supreme Court has held that they therefore *per se* cannot be "*made under circumstances* that would

---

[3] *Wager* specifically only overruled *Kozar* to the extent *Kozar* held that there was a "reasonable time" requirement for the administration of blood alcohol level breath tests.

[4] Of course, noncompliance that has no actual bearing on the accuracy or reliability of testing equipment may be harmless. *People v Rexford*, 228 Mich App 371, 378; 579 NW2d 111 (1998). However, as noted, it appears that Gier himself only learned that he had used an expired test kit because he was subpoenaed and called to testify. Thus, there is simply no way a defendant, facing potentially devastating and lifelong consequences, could test the reliability of the equipment used to dictate his or her fate unless that reliability is itself testimonial. It is impossible to determine whether noncompliance is harmless without first learning that it occurred. It has long been recognized that cross examination is the " 'greatest legal engine ever invented for the discovery of truth.' " *People v Fackelman*, 489 Mich 515, __ n 5; 802 NW2d 552 (2011), quoting *California v Green*, 399 US 149, 158; 90 S Ct 1930; 26 L Ed 2d 489 (1970). This case shows that cross-examination serves more purposes than merely permitting the trier of fact to assess credibility. Justice requires defendants to be able to explore the reliability and potential for human error of forensic tests that will likely otherwise be regarded as infallible.

lead an objective witness reasonably to believe that [they] would be available for use at a later trial." *Nunley*, 491 Mich at 707, 709 (emphases in original). Thus, because the logs were not prepared for the benefit of a specific prosecution or targeted at a specific individual, even though they are clearly prepared for litigation, they are definitionally not testimonial.

To reiterate, I find this reasoning concerning because notwithstanding the applicable administrative rule, the DataMaster testing logs clearly are expected to be used in litigation, commonly are used in litigation, and are critical to establishing the reliability of evidence that is frequently conclusive *per se* and otherwise difficult to challenge. The United States Supreme Court has indicated that the business record exception is inapplicable "if the regularly conducted business activity is the production of evidence for use at trial" or "calculated for use essentially in the court, not in the business." *Melendez-Diaz*, 557 US at 321-322 (quotation omitted). Because the entire purpose for keeping the logs is to establish the reliability of individual test results for prosecutions, they are clearly not just ordinary and routine administrative check-boxes, and I am unconvinced they are not, in substance, testimonial. At a minimum, they should not be admitted as business records without establishing their trustworthiness.

Therefore, I would hold that under the circumstances of this case, the lower courts correctly determined that the 120-day testing logs were not admissible under MRE 803(6), irrespective of whether the logs are testimonial, and I would affirm. I am constrained by *Nunley* to agree that the logs are definitionally not "testimonial," but I believe the situation at bar differs significantly from the situation in *Nunley*. Therefore, I respectfully urge our Supreme Court to provide the bench and bar with additional guidance.

/s/ Amy Ronayne Krause