THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. LOIS L. WILHELM, Defendant-Appellee.

Second District   No. 2—03—0106

Opinion filed January 27, 2004.

Linda A. Giesen, State's Attorney, of Dixon (Lawrence M. Bauer and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

James W. Mertes, of Pignatelli, Liston & Mertes, P.C., of Rock Falls, for appellee.

JUSTICE CALLUM delivered the opinion of the court:

Defendant, Lois L. Wilhelm, was arrested and charged by informa- tion with driving under the influence of alcohol (625 ILCS 5/11—501(a)(2) (West 2002)) and driving with a breath-alcohol concentration of 0.08 or more (625 ILCS 5/11—501(a)(1) (West 2002)). She was also given notice that her driving privileges were summarily suspended under section 11—501.1 of the Illinois Vehicle Code (625 ILCS 5/11—501.1 (West 2002)). She filed a petition to rescind the summary suspension, which the trial court granted. The State appeals, arguing that the court erred in construing the regulations for the administration of the breath test. We reverse.

■ Section 1286.310 of the Illinois Administrative Code (the Code) (20 Ill. Adm. Code § 1286.310 (2003)) describes the procedures for obtaining an individual's breath sample to determine his or her breath-alcohol concentration. The first step requires a 20-minute observation period before an officer administers the test, during which the individual may not have had alcohol or any foreign substance in his or her mouth. 20 Ill. Adm. Code § 1286.310(a)(1) (2003). This require-ment relates to the reliability of the breath test because foreign substances like food, smoke, or water may alter the breath-alcohol content. *People v. Miller*, 219 Ill. App. 3d 246, 248 (1991) (discussing 77 Ill. Adm. Code § 510.60(a) (1985), a prior version of the breath test administration regulations). If the individual regurgitates or vomits during the observation period, the observation must be started over after the individual rinses his or her mouth with water. 20 Ill. Adm. Code § 1286.310(a)(2) (2003). Once instructed to do so, the individual will blow into the breath-testing instrument, and he or she is required to keep blowing into the instrument until an adequate breath sample has been collected. 20 Ill. Adm. Code § 1286.310(b) (2003).

In this case, at the hearing on defendant's petition to rescind the statutory summary suspension, the parties stipulated to the following.

After the arresting officer continuously observed her for 20 minutes, defendant was given a breath test. The instrument used to take the breath sample, the Intox EC/IR, a Department of State Police approved breath test instrument (20 Ill. Adm. Code § 1286.210(a)(2) (2003)), consisted of an analysis device connected by a breath tube to a

mouthpiece. As instructed, defendant put the mouthpiece into her mouth and blew into it. That blow did not produce a sufficient sample for the breathalyzer to analyze. Defendant removed the mouthpiece, spoke to the officer, replaced the mouthpiece, and blew again. That blow also did not produce a sufficient breath sample. Again, she removed the mouthpiece, replaced it, and blew. The third blow produced a sufficient breath sample. The breathalyzer reading indicated that defendant had a breath-alcohol content above 0.08. Defendant's three attempts to give a breath sample took approximately four minutes, as the breathalyzer took about one minute to recycle and prepare for each test.

After the stipulated facts were presented, the court took the matter under advisement. In its written order, the court concluded that the State did not follow the rules for administering the breath test. It determined that the breathalyzer's mouthpiece was a "foreign substance," as defined by section 1286.10 of the Code (20 Ill. Adm. Code § 1286.10 (2003)). As such, the Code mandated that, once the foreign substance had entered defendant's body, a new 20-minute observation period was required before the next breath test could be administered. The court rescinded defendant's summary suspension. The State appeals.

■ The only issue on appeal is whether the trial court erred in its interpretation of the Code. Administrative rules and regulations have the force of law and must be construed under the same standards that govern the construction of statutes. *Northern Illinois Automobile Wreckers & Rebuilders Ass'n v. Dixon*, 75 Ill. 2d 53, 58 (1979). Therefore, the primary objective of interpreting a regulation is to ascertain and give effect to the drafters' intent. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503-04 (2000). The best indication of the drafters' intent is the regulation's language, given its plain and ordinary meaning. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994). Where the regulation's language is clear, it must be applied as written; however, if the language is susceptible of more than one interpretation, the court may look beyond the language to consider the regulation's purpose. *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 55 (2002). Regulatory intent must be ascertained from a consideration of the entire scheme, its nature, its object, and the consequences resulting from different constructions. *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 96 (1990). A court should not construe a regulation in a manner that would lead to consequences that are absurd, inconvenient, or unjust. *McMahan v. Industrial Comm'n*, 183 Ill. 2d 499, 513-14 (1998). The interpretation of a regulation is a question of law, and our review is *de novo*. *Lo v. Provena Covenant Medical Center*, 342 Ill. App. 3d 975, 982 (2003).

Specifically, the Code states, "During the 20[-]minute observation period the subject shall be deprived of alcohol and foreign substances and shall not have regurgitated or vomited." 20 Ill. Adm. Code § 1286.310(a)(1) (2003). The Code further defines a foreign substance as "any substance not in the subject's body when a 20-minute observation period is commenced, excluding a substance introduced due to normal breathing." 20 Ill. Adm. Code § 1286.10 (2003). The trial court interpreted the phrase "foreign substance" in section 1286.10 of the Code as including the breathalyzer's mouthpiece. The State argues that if the breathalyzer's mouthpiece is considered a "foreign substance," then a second breath test can never be performed. Under such a reading of the Code, once the mouthpiece enters an individual's mouth so that a breath sample can be obtained, a new observation period is required because a foreign substance has entered the subject's body. We find the language in question unclear; thus, the language is ambiguous.

■ When' a regulation is ambiguous, we may look beyond the language as written to discern the drafters' intent and consider the purpose of the regulation and the evils that it was designed to remedy. *In re B.C.*, 176 Ill. 2d 536, 542-43 (1997). The procedures for administering a breath test were established to ensure the accuracy of a breath test so that an accused is not subjected to inaccurate testing procedures by law enforcement officers. *Miller*, 219 Ill. App. 3d at 248; *People v. Haney*, 155 Ill. App. 3d 44, 46 (1987). To accept the trial court's reading of the Code would require us to ignore the essential purpose of the regulation, that is, to obtain an accurate breath test result. The drafters prohibited the subject from placing in his or her mouth foreign substances that may affect the breath test. For instance, under the prior version of the regulation, alcohol, food, drink, regurgitation, vomit, and smoke were the foreign substances expressly prohibited. 77 Ill. Adm. Code § 510.60(a) (1985). If the breathalyzer's mouthpiece is a "foreign substance," one could argue that even the initial breath test can never be performed. Such an interpretation of the Code is preposterous and clearly contrary to the drafters' intent.

■ Because the obvious purpose of the regulation is to perform reliable breath tests, we cannot agree with the trial court's conclusion that the breathalyzer's mouthpiece is a "foreign substance" under the Code. In addition to the Code's purpose, we find support for this resolution in Washington's breath test administration regulations. In that state, the procedures for performing an accurate breath test are as follows:

> "The following method for performing a breath test is approved by the state toxicologist *** and includes the following safeguards to

be observed by the operator prior to the test being performed. It must be determined that: (1) The person does not vomit or have anything to eat, drink, or smoke for at least fifteen minutes prior to administration of the test; and (2) the subject does not have any foreign substances, not to include dental work, fixed or removable, in his or her mouth at the beginning of the fifteen minute observation period. Such determination shall be made by either an examination of the mouth or a denial by the person that he or she has any foreign substances in mouth. *A test mouthpiece is not to be considered a foreign substance for purposes of this section.*" (Emphasis added.) Wash. Adm. Code § 448—13—040 (2003).

Obviously, the drafters of section 448—13—040 of the Washington Administrative Code (Wash. Adm. Code § 448—13—040 (2003)) have already considered the present issue—whether a breathalyzer's mouthpiece is a foreign substance that, if it enters a subject's mouth, requires a new observation period to ensure the test's accuracy. In a regulation very similar to our own, the Washington drafters expressly excluded a breathalyzer's mouthpiece from the definition of a foreign substance. Wash. Adm. Code § 448—13—040 (2003). Likewise, we hold that the Code drafters intended for the phrase "foreign substance" in section 1286.310 of the Code (20 Ill. Adm. Code § 1286.310 (2003)) to exclude a breathalyzer's mouthpiece. Accordingly, we further hold that the trial court's decision to grant defendant's petition to rescind the statutory summary suspension was erroneous.

The judgment of the circuit court of Lee County is reversed and the cause remanded.

Reversed and remanded.

GROMETER and BYRNE, JJ., concur.