THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM E. OLIVER, Defendant-Appellant.

Fifth District No. 5—07—0708

Opinion filed February 9, 2009.

Randy Patchett, of Patchett Law Office, of Marion, for appellant.

Tricia Shelton, State's Attorney, of Vienna (Norbert J. Goetten, Stephen E. Norris, and Rebecca E. McCormick, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE WEXSTTEN delivered the opinion of the court:

After submitting to a breath test that revealed he had a breath-alcohol concentration (BAC) of .140, the defendant, William E. Oliver, was convicted in the circuit court of Johnson County of driving under the influence of alcohol (DUI) (625 ILCS 5/11—501(a)(1) (West 2004)). On appeal from his conviction, the defendant argues that the circuit court erred in denying his motion *in limine* to suppress the results of his breath test on the ground that the State had failed to comply with section 1286.70 of Title 20 of the Illinois Administrative Code (20 Ill. Adm. Code §1286.70, amended at 28 Ill. Reg. 10017 (eff. June 30, 2004)). For the reasons that follow, we affirm.

## BACKGROUND

█ Following an August 2004 traffic stop, the defendant was arrested and cited for DUI by Trooper Aaron Hoffman of the Illinois State Police. The defendant was subsequently transported to the Johnson County sheriff's department, where he submitted to a breath test that revealed he had a BAC of .140. The test was administered using the sheriff's department's Intoximeter EC/IR breath-alcohol analyzer, an instrument approved for that use by the Department of State Police (the Department) (see 20 Ill. Adm. Code §1286.210, amended at 28 Ill. Reg. 10017 (eff. June 30, 2004)). The defendant later filed a motion *in limine* seeking to preclude the admission of the breath-test results on the ground that the State had failed to comply with section 1286.70, which at the time the defendant was arrested and charged provided as follows:

> "**Section 1286.70 Maintenance of Records for Approved Evidentiary Instruments**
>
> Subject test records, accuracy check records, and service records will be maintained for and/or by each approved evidentiary instrument.
>
> a) Subject test records and accuracy check records may be maintained in a logbook and/or the instrument's memory.
>
> b) Logbook entries will be made in the logbook as contempora-

neous [*sic*] as reasonably practicable to the time the procedure was performed.

c) Service records will be maintained by the Alcohol and Substance Testing Section or may be maintained in the instrument's memory. Malfunctions that are not breakdowns (non-[ ]analytical failures such as battery expiration, incorrect time/date, printer problems, etc.) will not be documented.

d) Only instruments equipped with sufficient internal memory to store 100 subject test records and that can download stored information to the central repository may keep the test records in the memory of the instrument.

e) All records removed from the internal memory of an instrument shall be erased and downloaded[,] if possible and practicable, to the central repository.

f) The central repository will maintain instrument records for not less than five years from the date downloaded." 20 Ill. Adm. Code §1286.70, amended at 28 Ill. Reg. 10026 (eff. June 30, 2004).[1]

At the time the defendant was arrested and charged, "central repository" was defined as "the collection and maintenance by the Department of business records, maintained by an agency in the normal course of business, of subject test records, accuracy check records, and service records." 20 Ill. Adm. Code §1286.10, amended at 28 Ill. Reg. 10023 (eff. June 30, 2004). In July and September 2005, the circuit court held a hearing on the defendant's motion *in limine* at which the following evidence was adduced.

Ronald Henson, an expert on breath-alcohol analysis instruments, testified that the Department promulgates the rules governing the use of breath-alcohol-analysis instruments in Illinois. Pursuant to the Department's rules, approved instruments, including the Intoximeter EC/IR, have to be checked for accuracy at least once every 62 days. See 20 Ill. Adm. Code §1286.200, amended at 28 Ill. Reg. 10017 (eff. June 30, 2004). Henson stated that the results of a particular instrument's accuracy checks are recorded in a logbook that is kept by the respective law enforcement agency but that instruments such as the Intoximeter EC/IR also have internal memory devices that record the checks as well. An Intoximeter EC/IR's memory also records the results of administered breath tests, and the memory's contents are downloadable and can be deleted or purged. Referring to the version

---

[1]Subsection (e) of section 1286.70 previously stated, "All records removed from the internal memory of an instrument shall be downloaded to the central repository." 20 Ill. Adm. Code §1286.70(e), adopted at 25 Ill. Reg. 3034 (eff. February 1, 2001).

of section 1286.70 that became effective February 1, 2001 (20 Ill. Adm. Code §1286.70, adopted at 25 Ill. Reg. 3023 (eff. February 1, 2001)), and was later amended effective June 30, 2004, Henson testified that, with this technology in mind, the Department promulgated a rule providing for a "central repository" of instrument information. He further testified that, to his knowledge, the central repository was never created. Henson estimated that an Intoximeter EC/IR's memory "will hold somewhere between 350 to 400 records" before purging is required.

Nancy Easum testified that she supervises the Department's alcohol-and-substance-testing section and is familiar with the Department's rules regarding breath-alcohol-analysis instruments. Easum stated that, although the version of section 1286.70 that became effective February 1, 2001, and was later amended effective June 30, 2004, provided for a "central repository" of instrument records, the Department was unable to maintain a central repository of records that included subject test records until June 2005. She indicated that, due to a lack of funding, the Department did not have the capability to download subject test results from an instrument's memory prior to June 2005. She also indicated that subject test records are not routinely kept for all instruments meeting the criteria set forth in subsection (d) of section 1286.70 and that thus a central repository containing all breath-test records did not exist. She explained that the Department had always kept instrument service records and accuracy test records. She testified that subject test results are generally recorded in an instrument's logbook and that the Intoximeter EC/IR also provides a printout of the results of each administered test. Easum acknowledged that an Intoximeter EC/IR's internal memory device can store more than 100 subject test records. Easum testified that she helped draft the version of section 1286.70 that became effective February 1, 2001, and was later amended effective June 30, 2004, and that the rule's intent was not to require that all instrument records be kept in the central repository. She further indicated that, since June 2005, whenever an instrument's memory becomes full, a technician downloads and forwards the stored data to the central repository before the instrument's memory is purged.

Trooper Gary Anderton of the Illinois State Police testified that, since 2002, he has been assigned to the Department's alcohol-and-substance-testing section as a technician. Anderton testified that he is responsible for maintaining approximately 75 breath-alcohol-analysis instruments, including the Johnson County sheriff's department's Intoximeter EC/IR. He explained that when an accuracy test is performed on an instrument, a record of the test is both kept in the

instrument's logbook and sent to the Department's central repository. He further stated that subject test records are also kept in an instrument's logbook and that each instrument also prints out copies of each subject test. He testified that the sheriff's department's Intoximeter EC/IR had always tested "within tolerance" and that he had never purged the instrument's memory.

In support of his motion *in limine* to preclude the admission of his breath-test results, the defendant argued that, because the central repository referred to in section 1286.70 did not exist when he took his breath test, the record of his breath test was not downloaded from the sheriff's department's Intoximeter EC/IR's internal memory device to the central repository as required and thus the Department had failed to comply with its "own rules." In response, the State maintained that the defendant's reading of section 1286.70 was flawed in that it incorrectly assumed that downloading an instrument's records to the central repository was an absolute requirement that affected all law enforcement agencies with breath-alcohol-analysis instruments meeting the criteria set forth in section 1286.70(d). The State further argued that it was not "possible and practicable" to have downloaded the defendant's breath-test record to the central repository in August 2004.

In July 2007, the circuit court entered an order denying the defendant's motion *in limine* to preclude the admission of his breath-test results. The defendant was subsequently found guilty of DUI at a stipulated bench trial and was sentenced to an 18-month term of conditional discharge. The present appeal followed.

## ANALYSIS

Echoing the arguments that he raised in the circuit court, the defendant contends that the results of his breath test should be deemed invalid because the central repository referred to in section 1286.70 did not exist when he submitted to the test. The defendant maintains that the evidence of his BAC should have been suppressed in light of the Department's failure to follow its own administrative rule. The State counters that section 1286.70 does not require that an eligible instrument's records be transmitted to a central repository as a matter of course and that, even if it did, the failure to comply with such a rule would not, in and of itself, warrant the suppression of the defendant's test results. The State further contends that, because the Department did not have the capability to download subject test records to the central repository until June 2005, it was not "possible and practicable" to do so in August 2004. We agree with the State.

Generally, "[i]n reviewing a trial court's ruling on a motion *in*

*limine,* our standard of review is abuse of discretion." *People v. Robinson,* 368 Ill. App. 3d 963, 974 (2006). Where the issue on appeal is a question of law, however, our review is *de novo. People v. Larsen,* 323 Ill. App. 3d 1022, 1026 (2001). The interpretation of an administrative rule or regulation is a question of law to which the principles governing the interpretation of statutes are applicable. *People v. Wilhelm,* 346 Ill. App. 3d 206, 208 (2004). "Therefore, the primary objective of interpreting a regulation is to ascertain and give effect to the drafters' intent," and "[t]he best indication of the drafters' intent is the regulation's language, given its plain and ordinary meaning." *Wilhelm,* 346 Ill. App. 3d at 208. Thus, a clearly worded administrative rule must be applied "as written." *Wilhelm,* 346 Ill. App. 3d at 208. An administrative rule should not be interpreted in a manner that produces "decidedly absurd results" or attributes "nonsensical intentions" to its drafters. *People v. Hanna,* 207 Ill. 2d 486, 500-01 (2003).

■ Section 1286.70(e) plainly states, "All records removed from the internal memory of an instrument shall be erased and downloaded[,] if possible and practicable, to the central repository." 20 Ill. Adm. Code §1286.70(e), amended at 28 Ill. Reg. 10017 (eff. June 30, 2004). By its plain language, however, this directive is only applicable when records are "removed" from an instrument's memory and if downloading the records to the central repository is both "possible and practicable." Here, the evidence before the circuit court was that the memory device of the sheriff's department's Intoximeter EC/IR had never been purged and that the Department was incapable of downloading and forwarding subject breath-test results to the central repository until June 2005. Thus, it was neither necessary nor possible to download the defendant's breath-test record to the central repository in August 2004 as the defendant suggests should have been done. Additionally, as the State observes, subsection (e) aside, the plain language of the rule contains no requirement that an instrument's information be transmitted to the central repository, and Easum's undisputed testimony was that the rule's intent was not to require that all instrument records be kept in the central repository. Moreover, nothing in section 1286.70 indicates that the existence of a central repository is a prerequisite for the admission of a subject breath-test result. Accordingly, we reject the defendant's contention that the results of his breath test should have been suppressed because a central repository that included subject test records did not exist in August 2004. To agree with the defendant on this point would require us to ignore the rule's plain language and read words into the rule that are not there, neither of which we can do. See *Chicago Tribune Co. v. Board of Education of the City of Chicago,* 332 Ill. App. 3d 60,

67 (2002); *Rita v. Mayden*, 364 Ill. App. 3d 913, 918 (2006). We would further have to assume that, as far back as 2001, the Department intended to make mandatory that which could not even be done until 2005. "We decline to attribute such nonsensical intentions to the Department." *Hanna*, 207 Ill. 2d at 501.

On appeal, the defendant suggests that, because a central repository that included subject test records did not exist in August 2004, information critical to his defense "was not available" and he was unable to challenge the results of his breath test. He does not, however, state the nature of this alleged information, nor does he explain how he could have used it to challenge the results of his breath test.[2] We also note that the defendant was not precluded from challenging the admissibility of his test results through the instrument records maintained in the sheriff's department's logbook. See, *e.g.*, *People v. Boughton*, 268 Ill. App. 3d 170, 172-73 (1994).

We lastly note our agreement with the State's argument that, even if section 1286.70 could be fairly interpreted as setting forth an unequivocal requirement that all instrument records be downloaded to the central repository, that requirement would be "administrative in nature and separate from the required standards for performing a breath test" (*People v. Claudio*, 371 Ill. App. 3d 1067, 1071 (2007)). Thus, the failure to comply with the requirement would not provide an independent basis upon which to suppress the results of a subject breath test. See *Claudio*, 371 Ill. App. 3d at 1070-71.

## CONCLUSION

For the foregoing reasons, we hereby affirm the circuit court's denial of the defendant's motion *in limine*.

Affirmed.

GOLDENHERSH and DONOVAN, JJ., concur.

---

[2]At the hearing on the defendant's motion *in limine*, Anderton indicated that the only difference between the information recorded on the printout of a subject breath test and the breath-test information stored in an instrument's memory is that the latter includes "some minimal extra data" such as the instrument's internal temperature. Anderton further testified that, if an instrument's internal temperature is either too high or too low, the instrument will go into a regulatory mode and will not allow a breath test to be performed until the temperature has been stabilized.