THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. HEIDI E. VAN BELLEHEM, Defendant-Appellee.

Fifth District   Nos. 5—07—0503, 5—07—0638 cons.

Opinion filed May 7, 2009.

Edward C. Deters, State's Attorney, of Effingham (Patrick Delfino, Stephen E. Norris, and Kevin D. Sweeney, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

E. Joyce Randolph and Michelle A. Zalisko, both of State Appellate Defender's Office, of Mt. Vernon, and Heidi E. Van Bellehem, of Beecher City, *pro se*, for appellee.

JUSTICE STEWART delivered the opinion of the court:

The defendant, Heidi E. Van Bellehem, was charged with driving under the influence of alcohol (DUI) (625 ILCS 5/11—501(a)(2) (West 2006)). The trial court granted the defendant's motion to suppress the results of the breath test administered after her arrest. The parties later stipulated that the evidence that had been presented at the hearing on the motion to suppress would also be presented at the hearing on the defendant's petition to rescind the summary suspension of her driver's license. See 625 ILCS 5/2—118.1 (West 2006). The court granted the petition to rescind. The State appeals from those orders in this consolidated appeal. The State argues that the trial court's orders granting the motion to suppress and the petition to rescind should be reversed. We agree.

## BACKGROUND

After her arrest for DUI, the defendant filed a "Motion to Exclude Breath Test Results." She alleged that she had not been continuously observed for at least 20 minutes before the breath test and that she had not been deprived of foreign substances during the observation period, in violation of the Illinois Administrative Code (Administrative Code) regulations controlling the administration of breath-testing of DUI suspects (breath-test regulation). 20 Ill. Adm. Code §1286.310, amended at 28 Ill. Reg. 10038, eff. June 30, 2004. Section 11—501.2(a)(1) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11—501.2(a)(1) (West 2006)) requires that a chemical analysis of a person's breath be conducted according to the standards and regulations set by the Department of State Police (Department). Those standards and regulations are embodied in the Administrative Code regulations referred to above.

The evidence presented at the hearing on the motion to suppress is as follows. Illinois State Trooper Ron Will arrested the defendant for DUI during the early morning of April 21, 2007. The court admitted and reviewed the videotape of the defendant's arrest. The

videotape depicted Will's observation of the defendant and her conversations with him. Will testified that he began his observation of the defendant at 1:20 a.m., according to his wristwatch, which he knew did not gain or lose time. Will began his observation when he was leaving the scene of the arrest. At that time, the defendant was sitting in the front passenger seat of his squad car. He testified that he had a clear view of her and that he continually monitored her. He testified that there was nothing in her mouth and that she could not put anything in her mouth because she was handcuffed and nothing was within her reach. He testified that during the observation period, the defendant talked to him. He would have known if she had anything in her mouth because it would have "changed her speech."

Will testified that upon arrival at the Effingham County jail at 1:27 a.m., he gathered his paperwork and walked around the car to open the door for the defendant. After escorting her into the jail, he removed her handcuffs. Correctional officer Justin Finfrock went with Will and the defendant to the Intoxilyzer room, where they continued to observe her. Will testified that he requested Finfrock to accompany him during the observation period because the defendant was "very emotionally upset," and "she had said that she had taken a Valium." Will also wanted another officer in the room with him because the defendant was a female. During the observation period, Will did not lose sight of the defendant. He testified that he did not see her put anything in her mouth. He read her the warning to motorists that is required by section 11—501.1(c) of the Vehicle Code (625 ILCS 5/11—501.1(c) (West 2006)). Will administered the breath test to the defendant at 1:48 a.m. The test showed that the defendant had a blood-alcohol content of .168, more than twice the legal limit for one driving a vehicle.

The defendant acknowledged that the videotape depicted her and Will as they were arriving at the jail. She testified that both Will and Finfrock sat with her in the room where her breath was tested but that Will did not remain in the room the entire time. Will testified that, although he left very briefly, he did not lose sight of the defendant. She testified that she had gum in her mouth from the moment she was arrested through the time she took the breath test. Will testified that she "had no gum in her mouth." The defendant testified that she always keeps gum in her mouth to freshen her breath but does not chew it. She testified that she had gum in her mouth during her testimony but had not chewed it.

Both the State and defense counsel argued that the case of *People v. Bonutti*, 212 Ill. 2d 182, 817 N.E.2d 489 (2004), controlled the trial court's decision. Defense counsel argued that *Bonutti* required the

court to suppress the evidence of the breath test because the defendant had gum in her mouth during the test and Will did not ask any questions or take any actions to confirm his belief that she had nothing in her mouth. The State argued that the arresting officer had complied with the breath-test regulation and that the evidence showed that the defendant did not have anything in her mouth.

The trial judge found that the quality of the videotape was "very, very poor" but that he "did not see anything in her mouth." The judge stated that when he could see the defendant's face on the videotape, "she did not appear to be chewing anything," and he did not notice any hesitancy in her speech. The court stated that the issue was whether the motion should be granted on the defendant's testimony alone without any medical evidence to support her claim. Defense counsel acknowledged that he could not provide any evidence in support of the defendant's claim that she had gum in her mouth. The defendant did not present any evidence to show that gum in her mouth would affect the breath-test result. The court ruled that the language of the breath-test regulation—that the defendant must be deprived of alcohol or foreign substances during the 20-minute observation period—imposed on the arresting officer "some obligation." The court found as follows:

"THE COURT: There was no indication here other than the fact that no one, including this Court, observed any sign outwardly that she had anything in her mouth. In fact, I will state for the record, um, I don't believe she had anything in her mouth. But that opinion does not contradict her testimony under oath in this court."

The judge granted the defendant's motion but stated again that he did not "think she had anything in her mouth." The court ruled that the arresting officer should have either asked the defendant if she had anything in her mouth or asked her to open her mouth so that he could look inside. The court found that since the arresting officer did neither, he had not complied with the breath-test regulation. Based upon those findings, the court granted the defendant's motion to suppress the breath-test results.

At a separate hearing, the State and the defendant stipulated that the evidence that had been presented at the hearing on the motion to suppress would also be presented in the hearing on the defendant's petition to rescind. Based upon that stipulation, the trial court granted the petition to rescind. The State filed timely notices of appeal from both rulings, and those cases are consolidated in this appeal.

## ANALYSIS

■ The issue presented here is whether an arresting officer has an obligation before conducting a breath test to inquire verbally or to

physically determine whether a DUI suspect has anything in his or her mouth. Section 11—501.2 of the Vehicle Code (625 ILCS 5/11—501.2 (West 2006)) requires that, if blood- or breath-test results are to be considered valid and admissible in court, any chemical analysis of the suspect's blood or breath must be performed according to the Administrative Code regulations. *People v. Bergman*, 253 Ill. App. 3d 369, 373, 623 N.E.2d 1052, 1055 (1993). Therefore, our resolution of the issue depends upon our interpretation of the breath-test regulation, which mandates as follows:

"The following procedures shall be used to obtain a breath sample ***:

a) Prior to obtaining a breath[-]analysis reading from a subject, [the law enforcement officer administering the test] shall continuously observe the subject for at least 20 minutes.

1) During the 20[-]minute observation period the subject *shall be deprived of alcohol and foreign substances* and shall not have vomited." (Emphasis added.) 20 Ill. Adm. Code §1286.310(a)(1), amended at 28 Ill. Reg. 10038, eff. June 30, 2004.

We consider whether the requirement that a DUI suspect "shall be deprived of alcohol and foreign substances" during the 20-minute observation period imposes on the officer any obligation to verify his or her belief that there is nothing in the suspect's mouth. In other words, does the term "shall be deprived" require the officer to ask any particular questions or to investigate a suspect's mouth? We hold that neither the breath-test regulation nor public policy requires any such questions or investigation. Nevertheless, we note with approval the officer's testimony in this case that he routinely asks DUI suspects if they have anything in their mouth before he administers breath tests. That practice is prudent and advisable, although not strictly required.

Both parties argue that the *Bonutti* court's interpretation of the breath-test regulation controls the outcome of this case, although they urge opposite results. That decision sets forth the applicable standards of review:

"On appeal from the granting of a motion to suppress, this court employs a bifurcated standard of review. With respect to factual findings, this court accords a great deal of deference to the trial court and will reverse only if its factual findings are against the manifest weight of the evidence. [Citation.] On the ultimate question of whether the evidence in question should or should not be suppressed, however, we employ a *de novo* standard. [Citation.] ***

Administrative regulations have the force and effect of law and are construed according to the same standards that govern the construction of statutes. [Citation.] The fundamental rule of statu-

tory construction is to ascertain and give effect to the legislature's intent. [Citation.] *** The construction of a statute is a question of law that is reviewed *de novo*." *Bonutti*, 212 Ill. 2d at 188-89, 817 N.E.2d at 492-93.

In *Bonutti*, the defendant, who had been charged with DUI, testified that he suffered from an esophageal reflux disorder. *Bonutti*, 212 Ill. 2d at 185-86, 817 N.E.2d at 491. He testified that he had experienced an episode of reflux, causing acid from his stomach to rise into his throat, during the observation period before his breath test, but that he did not tell anyone or exhibit any outward symptoms. *Bonutti*, 212 Ill. 2d at 186, 817 N.E.2d at 491. The defendant also presented medical testimony to support his claims. *Bonutti*, 212 Ill. 2d at 186-87, 817 N.E.2d at 492.

The supreme court affirmed the trial court's grant of the defendant's motion to suppress. *Bonutti*, 212 Ill. 2d at 192, 817 N.E.2d at 495. In affirming the trial court, the supreme court first looked at the words of the breath-test regulation. *Bonutti*, 212 Ill. 2d at 190, 817 N.E.2d at 493-94. The court "categorically" rejected the State's argument that the sole inquiry should be whether the officer actually observed any vomiting or regurgitation during the observation period. *Bonutti*, 212 Ill. 2d at 190, 817 N.E.2d at 493. Looking at the text of the regulation, the court ruled that a proper inquiry focuses on the actions of the one taking the test, not on the observations of the officer doing the testing. *Bonutti*, 212 Ill. 2d at 190, 817 N.E.2d at 494.

The court also considered public policy and found that "the purpose of section 1286.310(a) is to ensure that only accurate breath-alcohol tests are admitted into evidence against a criminal defendant." *Bonutti*, 212 Ill. 2d at 190, 817 N.E.2d at 494. The court determined that "reliability, after all, is the paramount concern." *Bonutti*, 212 Ill. 2d at 191, 817 N.E.2d at 494. The court explained its ruling, that the evidence of the breath test should be suppressed, as follows:

"Section 1286.310(a) exists because regurgitation within 20 minutes of a breath-alcohol test can render a *false positive*. In other words, a lack of compliance with section 1286.310(a) has the potential to create criminals out of people who are not." (Emphasis in original.) *Bonutti*, 212 Ill. 2d at 192, 817 N.E.2d at 495.

The trial court in our case incorrectly concluded that *Bonutti* required it to suppress the breath-test results and to rescind the summary suspension. *Bonutti* does not require that result because its facts are distinguishable. There, the trial court determined that the defendant was telling the truth about having experienced an episode of reflux and that his testimony was corroborated by his physician. *Bonutti*, 212 Ill. 2d at 187, 817 N.E.2d at 492. In the case before us,

the trial court found that the defendant had nothing in her mouth and that no evidence corroborated her testimony that she had gum in her mouth, but it granted the motion to suppress anyway.

The focus of the court in *Bonutti* was on the prohibition against regurgitation before or during the breath-testing. *Bonutti*, 212 Ill. 2d at 189-90, 817 N.E.2d at 493-94. The focus of the court in our case was on the requirement that the suspect be deprived of foreign substances. However, both requirements of the breath-test regulation are included to ensure reliable test results. See *People v. Wilhelm*, 346 Ill. App. 3d 206, 207, 803 N.E.2d 1032, 1033 (2004) (the requirement that the suspect may not have had alcohol or any foreign substance in his or her mouth relates to the reliability of the test). We note that the regurgitation of stomach contents is likely to affect the reliability of testing, particularly if the driver has consumed any alcohol. On the other hand, we can hypothesize many foreign substances that could be placed in a person's mouth that would have no effect on testing. Thus, when considering the foreign-substance portion of the breath-test regulation, the focus should be on proof that the reliability of the test has been affected.

■ In the case at bar, the trial court found that the defendant did not have anything in her mouth when the test was administered. That finding is not against the manifest weight of the evidence. There was no evidence to corroborate the defendant's assertion that she had gum in her mouth. She presented no expert testimony to show that any amount of gum in her mouth would have made the breath-test results unreliable. Additionally, the officer that was in her presence for more than 20 minutes before administering the breath test testified that she did not have anything in her mouth and that he would have known if she did because it would have affected her speech. Accordingly, we accept the court's finding that the defendant had nothing in her mouth when her breath was tested.

We note that the court in *Bonutti* stressed that the main focus should be on the actions of the defendant, not the observations of the officer. *Bonutti*, 212 Ill. 2d at 190, 817 N.E.2d at 494. However, the court did not rule that the observations of the officer were irrelevant, but only that those observations could not defeat a contradictory finding that the defendant had actually regurgitated during the 20-minute observation period. *Bonutti*, 212 Ill. 2d at 190-91, 817 N.E.2d at 494. The court ruled that the defendant's action, and not the officer's observation, was crucial to the court's determination of the reliability of the breath test. *Bonutti*, 212 Ill. 2d at 191, 817 N.E.2d at 494. Thus, the *Bonutti* decision did not require the trial court in this case to suppress the breath-test results. The court found that the defendant had

nothing in her mouth before or during the breath test, and that finding was supported by the officer's observation and the rest of the evidence.

We also reject the trial court's ruling that it could not "contradict" the defendant's testimony. There is no basis in the law or the record to support a ruling that the defendant's unsupported testimony somehow controlled the court's finding of fact. On review, we are to give great deference to the trial court's findings of fact. *People v. Pitman*, 211 Ill. 2d 502, 512, 813 N.E.2d 93, 100 (2004). "This deferential standard of review is grounded in the reality that the circuit court is in a superior position to determine and weigh the credibility of the witnesses, observe the witnesses' demeanor, and resolve conflicts in their testimony." *Pitman*, 211 Ill. 2d at 512, 813 N.E.2d at 100-01. In our case, the trial court ruled that it should defer to the defendant's testimony regardless of its belief about her demeanor and credibility. Additionally, by its decision, the court apparently failed to weigh her testimony against the contradictory testimony of the arresting officer. Such deference amounts to an abdication of the trial court's role as the ultimate finder of fact in this case. To the extent that the trial court's orders were based upon that abdication, we reject them.

Moreover, the trial court's ruling confuses the manner in which the burden of proof should have operated in this case. When a defendant files either a motion to suppress or a petition to rescind, the defendant bears the burden to present a *prima facie* case that the result of the test was unreliable. *People v. Miller*, 219 Ill. App. 3d 246, 248, 583 N.E.2d 10, 12 (1991). "On appeal, this court cannot reverse the trial court's finding on either motion unless it is manifestly erroneous." *Miller*, 219 Ill. App. 3d at 248-49, 583 N.E.2d at 12. Here, the trial court found that nothing was in the defendant's mouth, and there was no evidence to show that the presence of gum in her mouth would have made the breath-test result unreliable. The defendant did not present a *prima facie* case that the result of her test was unreliable. Accordingly, the trial court's finding that it could not contradict the defendant's statement was manifestly erroneous.

The trial court also determined that the *Bonutti* decision required the arresting officer to take some affirmative action to ensure that the defendant had nothing in her mouth before he administered the breath test. The trial court did not outline the specifics of those requirements but simply found that the officer should have either asked the defendant if she had anything in her mouth or looked inside her mouth. However, there is nothing in either *Bonutti* or the breath-test regulation to support that requirement.

First, the language of the breath-test regulation does not include any requirement that the officer ask any particular questions or take any action to determine the content of the suspect's mouth. If the Department thought those actions were required, it would have listed them, just as it listed the requirement for retesting if the subject regurgitates. See 20 Ill. Adm. Code §1286.310(a)(2), (a)(3), amended at 28 Ill. Reg. 10038, eff. June 30, 2004 ("If the subject vomits during the observation (deprivation) period, the process shall be started over by having the individual rinse the oral cavity with water," and if vomiting continues, "alternate testing shall be considered"); *Wilhelm*, 346 Ill. App. 3d at 209-10, 803 N.E.2d at 1035 (discussion of a similar Washington state breath-test regulation that required " 'either an examination of the mouth or a denial by the person that he or she has any foreign substances in mouth' " (quoting Wash. Adm. Code §448—13—040 (2003))). Therefore, the trial court's ruling is not supported by the language of the regulation itself.

Additionally, the Administrative Code defines "foreign substance" as "any substance not in the subject's body when a 20-minute observation period is commenced, excluding a substance introduced due to normal breathing." 20 Ill. Adm. Code §1286.10, amended at 28 Ill. Reg. 10024, eff. June 30, 2004. In the case at bar, the defendant testified that she had gum in her mouth before the 20-minute observation period commenced. Hence, even if the trial court had determined that she had gum in her mouth during the observation period, the gum would not have qualified as a foreign substance as defined in the Administrative Code. Since the court had no other basis for finding the breath-test regulation to be violated, its ruling is improper under the plain language of the regulations.

Second, the public policy of the regulation does not support the trial court's ruling. The procedures for administering breath tests were established to ensure the accuracy of breath-test results. *Wilhelm*, 346 Ill. App. 3d at 209, 803 N.E.2d at 1035. In our case, the trial court found that the defendant did not have anything in her mouth. The court ruled, however, that the breath-test results should be excluded and the defendant's summary suspension rescinded because the officer did not ask the defendant if she had anything in her mouth or visually or manually check the interior of her mouth, neither of which are required. The court made those rulings even though there was no evidence to suggest that gum in the defendant's mouth would have made the test results unreliable. Hence, there is no public policy reason to exclude the breath-test result.

Third, other cases considering similar facts do not support the trial court's ruling. In *People v. Witt*, 258 Ill. App. 3d 124, 125, 630

N.E.2d 156, 157 (1994), the appellate court reversed the trial court's grant of the defendant's motion to suppress the results of his breath test. The court ruled that wearing false teeth during the breath test did not violate a previous version of the breath-test regulation, which required that the suspect " 'must not have ingested alcohol, food, drink, regurgitated, vomited[,] or smoked' " during the 20-minute observation period (77 Ill. Adm. Code §510.60(a) (1991)). *Witt*, 258 Ill. App. 3d at 126, 630 N.E.2d at 158 ("We find no authority to support the trial court's conclusions that false teeth constitute foreign matter or that false teeth affect breath tests").

In *Bergman*, 253 Ill. App. 3d 369, 623 N.E.2d 1052, this court affirmed the trial court's denial of the motorist's petition to rescind his summary suspension. There, we considered whether the trial court had erred in finding that eating breath mints just prior to taking the breath test did not render the test unreliable or invalidate it. *Bergman*, 253 Ill. App. 3d at 370, 623 N.E.2d at 1053. In *Bergman*, the arresting officer had continuously observed the defendant during the 20-minute observation period. *Bergman*, 253 Ill. App. 3d at 371, 623 N.E.2d at 1054. The defendant testified that, before his breath test, he put a breath mint in his mouth without the officer seeing him. *Bergman*, 253 Ill. App. 3d at 371, 623 N.E.2d at 1054. We upheld the trial court's ruling in *Bergman* on the ground that there was sufficient evidence to show that the breath-test result was reliable even if the defendant had ingested a breath mint before taking the test. *Bergman*, 253 Ill. App. 3d at 377, 623 N.E.2d at 1057-58. Neither *Bergman* nor any other case requires an arresting officer to ask any specific questions or to investigate a DUI suspect's mouth before administering a breath test.

Here, we find that the arresting officer substantially complied with the breath-test regulation, and the defendant presented nothing to show that the result of her breath test was unreliable. The trial court found that the defendant had nothing in her mouth, and that finding is not against the manifest weight of the evidence. Therefore, we reverse the trial court's orders granting the defendant's motion to suppress and petition to rescind.

## CONCLUSION

For all of the reasons stated, we reverse the trial court's orders granting the defendant's motion to suppress the result of her breath test and granting her petition to rescind the summary suspension of

her license. We remand for further proceedings consistent with this opinion.

Reversed; cause remanded.

WELCH and GOLDENHERSH, JJ., concur.