THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DELORES J. HENRY, Defendant-Appellee.

Third District    No. 3—09—0081

Opinion filed January 19, 2010.—Rehearing denied April 15, 2010.

WRIGHT, J., dissenting.

Brian Towne, State's Attorney, of Ottawa (Terry A. Mertel and Jessica R. Bargmann (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Eric L. Miskell and Ryan Hamer (argued), both of Miskell Law Center, of Ottawa, for appellee.

JUSTICE LYTTON delivered the opinion of the court:

While driving her automobile, defendant, Delores Henry, struck a pedestrian. Police arrested defendant for various traffic violations and transported her to a hospital to have her blood and urine tested. Based on the results of her urine test, defendant was charged with aggravated driving under the influence of alcohol (625 ILCS 5/11—501(d) (West 2006)). Defendant filed a motion to suppress the results of her urine test. The trial court granted the motion. We reverse and remand.

On April 11, 2008, defendant was involved in a motor vehicle accident wherein she struck and injured a worker in a construction zone. Shortly after the collision, Illinois State Police Trooper Jeffrey Nichols arrested defendant and issued her citations for driving while license suspended (625 ILCS 5/6—303 (West 2006)), failing to yield to a flagger in a construction zone (625 ILCS 5/11—908 (West 2006)), and reckless conduct (720 ILCS 5/12—5(a—5) (West 2006)). Nichols transported defendant to a hospital to have her blood and urine tested.

Maria Gunia, a phlebotomist, drew defendant's blood and collected defendant's urine. Nichols waited outside the restroom while Gunia collected defendant's urine sample. Gunia and defendant were the only individuals in the restroom when the collection took place. Defendant's blood and urine were sent to the Illinois State Police Forensic Science Laboratory for analysis. As a result of the urine toxicology testing, a grand jury indicted defendant for aggravated driving under the influence of alcohol (625 ILCS 5/11—501(d) (West 2006)).

Defendant filed a motion to suppress the results of her urine test, claiming that its collection did not comply with the requirements of section 11—501.2 of the Illinois Vehicle Code (Code) (625 ILCS 5/11—501.2 (West 2006)) or section 1286.330(b) of title 20 of the Illinois Administrative Code (20 Ill. Adm. Code §1286.330(b), amended at 31

Ill. Reg. 7305, eff. May 1, 2007). At the hearing on defendant's motion to suppress, the parties stipulated that Gunia was a licensed phlebotomist, not a registered nurse, law enforcement officer or employee of the State Police. No physician ordered Gunia to take defendant's blood or urine. Gunia was supervised by a lab technician when she collected defendant's blood and urine.

The trial court granted defendant's motion to suppress, finding that Gunia's collection of defendant's urine did not comply with section 1286.330(b) of title 20 of the Administrative Code (20 Ill. Adm. Code §1286.330(b), amended at 31 Ill. Reg. 7305, eff. May 1, 2007).

## I

The State argues that the trial court erred in granting defendant's motion to suppress because section 1286.330(b) of title 20 of the Illinois Administrative Code (1) is not authorized by statute, (2) is otherwise invalid, and (3) does not apply in this case.

■ Section 1286.330 states as follows:

"The following procedures shall be used to obtain a urine sample from a subject to determine the presence of alcohol, other drugs or intoxicating compounds:

\*\*\*

(b) A urine sample may be collected by the arresting officer, another law enforcement officer, an agency employee, or a hospital nurse who can authenticate the sample. The officer, agency employee, or nurse shall be of the same sex as the subject undergoing testing." 20 Ill. Adm. Code § 1286.330(b), amended at 31 Ill. Reg. 7305, eff. May 1, 2007.

### A. Statutory Authority for Regulation

An administrative agency has authority to regulate and execute the provisions of a statute and carry out the powers conferred on it. *Eastman Kodak Co. v. Fair Employment Practices Comm'n*, 86 Ill. 2d 60, 70, 426 N.E.2d 877, 882 (1981). The Department of State Police (Department) has the authority "[t]o promulgate rules and regulations necessary for the administration and enforcement of its powers and duties, whenever granted and imposed." 20 ILCS 2605/2605—15 (West 2006).

Defendant argues that various sections of the Vehicle Code, including particularly sections 11—501.6(a) and 11—501.2(a), authorize the Department to enact section 1286.330(b).

### 1. Section 11—501.6(a)

Section 11—501.6(a) of the Vehicle Code requires a driver "who has been involved in a personal injury or fatal motor vehicle accident" and has been issued a traffic ticket to submit to a blood, breath or

urine test "for the purpose of determining the content of alcohol, other drug or drugs, or intoxicating compound or compounds of such person's blood." 625 ILCS 5/11—501.6(a) (West 2006). That section provides that "[t]he test or tests shall be administered at the direction of the arresting officer." 625 ILCS 5/11—501.6(a) (West 2006). It does not authorize the Department to create regulations regarding the collection and analysis of blood, breath or urine and therefore does not apply to this case.

### 2. Section 11—501.2(a)

Section 11—501.2(a) of the Vehicle Code specifically authorizes part 1286 of title 20 of the Illinois Administrative Code. See *People v. Olsen*, 388 Ill. App. 3d 704, 714-15, 903 N.E.2d 778, 786-87 (2009). Section 11—501.2(a) of the Vehicle Code states in relevant part:

"(a) Upon the trial of any civil or criminal action or proceeding arising out of an arrest for an offense as defined in Section 11—501 or a similar local ordinance or proceedings pursuant to Section 2—118.1, evidence of the concentration of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof in a person's blood or breath at the time alleged, as determined by analysis of the person's blood, urine, breath or other bodily substance, shall be admissible. Where such test is made the following provisions shall apply:

1. Chemical analyses of the person's blood, urine, breath or other bodily substance to be considered valid under the provisions of this Section shall have been performed according to standards promulgated by the Department of State Police by a licensed physician, registered nurse, trained phlebotomist acting under the direction of a licensed physician, certified paramedic, or other individual possessing a valid permit issued by that Department for this purpose. The Director of State Police is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, to issue permits which shall be subject to termination or revocation at the discretion of that Department and to certify the accuracy of breath testing equipment. The Department of State Police shall prescribe regulations as necessary to implement this Section." 625 ILCS 5/11—501.2(a)(1) (West 2006).

The plain language of section 11—501.2(a)(1) gives the Department authority to create regulations for testing breath, blood and urine for alcohol and other drugs. See *Olsen*, 388 Ill. App. 3d at 714-15, 903 N.E.2d at 786-87. Section 11—501.2(a)(2) identifies who may collect blood from a DUI suspect; however, that section does not apply to the

collection of urine. 625 ILCS 5/11—501.2(a)(2) (West 2006). Thus, we must look to the regulations.

## B. Validity of Regulation

We must now determine whether the authority to regulate the analysis of bodily substances includes the authority to regulate the collection of them as well. In other words, is section 1286.330(b) invalid because the statute does not expressly authorize regulations concerning the collection of bodily substances?

Administrative regulations are presumed to be valid and have the force and effect of law. *Eastman Kodak Co.*, 86 Ill. 2d at 71, 426 N.E.2d at 882. However, "[a]dministrative regulations are valid ' "only to the extent that they follow the statute." ' " *People v. Bair*, 379 Ill. App. 3d 51, 59, 884 N.E.2d 184, 192 (2008), quoting *People ex rel. Madigan v. Petco Petroleum Corp.*, 363 Ill. App. 3d 613, 629, 841 N.E.2d 1065, 1077 (2006), quoting *Illinois RSA No. 3, Inc. v. Department of Central Management Services*, 348 Ill. App. 3d 72, 77, 809 N.E.2d 137, 140 (2004).

If a regulation does not follow the statute that authorized its creation, it is invalid. *Bair*, 379 Ill. App. 3d at 59, 884 N.E.2d at 192. To determine whether a regulation follows the statute, a court must ascertain and give effect to the legislature's intent. *Bair*, 379 Ill. App. 3d at 59, 884 N.E.2d at 193.

In section 11—501.2 of the Vehicle Code, "[t]he legislature delegated authority to the Department of State Police to promulgate 'standards' for blood and other tests, for the purpose of ensuring the validity of the test results." *Bair*, 379 Ill. App. 3d at 59, 884 N.E.2d at 192. Department regulations concerning the collection of bodily substances for alcohol testing are necessary to ensure accurate and reliable test results. See *People v. Van Bellehem*, 389 Ill. App. 3d 1129, 1135, 907 N.E.2d 922, 927 (2009); *People v. Wilhelm*, 346 Ill. App. 3d 206, 209, 803 N.E.2d 1032, 1035 (2004); *People v. Bonutti*, 338 Ill. App. 3d 333, 341, 788 N.E.2d 331, 337 (2003). Faulty collection of a bodily substance can result in an inaccurate test result. See *People v. Miller*, 219 Ill. App. 3d 246, 249-51, 583 N.E.2d 10, 12-14 (1991) (defendant chewing and swallowing tobacco prior to breath test affected test result).

The Department promulgated part 1286 of title 20 of the Illinois Administrative Code to establish procedures for the proper collection of urine. The collection of bodily substances is directly related to the analysis of those substances and, in turn, to ensuring accurate and reliable test results. See, *e.g.*, *Miller*, 219 Ill. App. 3d at 249-51, 583 N.E.2d at 12-14 (breath collection that did not comply with regulation may produce inaccurate result).

Proper collection is a function of proper analysis. Regulations ensuring the proper collection of urine samples are necessary to implement section 11—501.2. The Department was therefore authorized to promulgate section 1286.330, setting forth urine collection procedures.

### C. Applicability of Regulation

The State argues that if section 1286.330(b) is valid, it does not apply where the defendant was not arrested for DUI when her urine was collected. The State contends that section 11—501.2 of the Code applies only if a prosecution arises from an arrest for driving under the influence before the urine collection. We decline to interpret section 11—501.2 so narrowly.

Section 11—501.2 of the Code governs the admissibility of alcohol test results in DUI prosecutions. *People v. Emrich*, 113 Ill. 2d 343, 349, 498 N.E.2d 1140, 1142 (1986). Section 11—501.2 applies if a defendant is not immediately arrested on a DUI charge but is later indicted for such a charge. See *Emrich*, 113 Ill. 2d at 345, 498 N.E.2d at 1141 (applying section 11—501.2 where defendant was indicted, not arrested, for DUI); *People v. Morris*, 394 Ill. App. 3d 678, 917 N.E.2d 1, 2 (2009) (same); *People v. Green*, 294 Ill. App. 3d 139, 141, 689 N.E.2d 385, 387 (1997) (same). We believe the essence of the statute is a defendant's prosecution for DUI.

■ Defendant was arrested for numerous traffic violations and taken by police to a hospital to have her blood and urine tested. As a result of the testing, defendant was indicted for aggravated DUI. Since she was charged and prosecuted for DUI, section 11—501.2 applies to the admissibility of her urine test. See *Emrich*, 113 Ill. 2d at 349, 498 N.E.2d at 1142.

### II

Since we have found that section 1286.330(b) is valid and applies to defendant, we must now determine if the State complied with that regulation. The State argues that (1) the regulation allows a phlebotomist to collect urine, or, alternatively, (2) a phlebotomist collecting urine substantially complies with the regulation.

### A. Who May Collect Urine Under Regulation

The primary objective of interpreting a regulation is to ascertain and give effect to the drafters' intent. *People v. Carpenter*, 385 Ill. App. 3d 156, 160, 895 N.E.2d 24, 28 (2008). The most reliable indicator of regulatory intent is the language of the regulation itself. *Carpenter*, 385 Ill. App. 3d at 160, 895 N.E.2d at 28-29. Clear and unambiguous terms are given their plain and ordinary meaning. *Carpenter*, 385 Ill. App. 3d at 160-61, 895 N.E.2d at 29. Regulatory intent must be

ascertained from a consideration of the entire scheme, its nature, its object, and the consequences resulting from different constructions. *Carpenter*, 385 Ill. App. 3d at 161, 895 N.E.2d at 29. A court should not construe a regulation in a manner that would lead to consequences that are absurd, inconvenient or unjust. *Carpenter*, 385 Ill. App. 3d at 161, 895 N.E.2d at 29.

Generally, the use of the word "may" suggests a permissive rather than mandatory reading. *People v. Bilelegne*, 381 Ill. App. 3d 292, 295, 887 N.E.2d 564, 567 (2008); *Hampton v. Village of Washburn*, 317 Ill. App. 3d 439, 443, 739 N.E.2d 1019, 1022 (2000). However, rules should be read as a whole with all relevant parts considered. *Hampton*, 317 Ill. App. 3d at 443, 739 N.E.2d at 1022. Where the rights of the public are involved, language importing permission or authority may be read as mandatory whenever such a construction is made necessary by the evident intention of the legislature. *People v. Kelly*, 344 Ill. App. 3d 1058, 1063, 802 N.E.2d 850, 854 (2003); *A.Y. McDonald Manufacturing Co. v. State Farm Mutual Automobile Insurance Co.*, 225 Ill. App. 3d 851, 855, 587 N.E.2d 623, 626-27 (1992).

The regulation provides that "[a] urine sample may be collected by the arresting officer, another law enforcement officer, an agency employee, or a hospital nurse who can authenticate the sample." 20 Ill. Adm. Code § 1286.330(b), amended at 31 Ill. Reg. 7305, eff. May 1, 2007. The State argues that the use of the word "may" indicates that the list of individuals contained therein is not exhaustive. We disagree and find that the language of the provision as a whole requires us to construe the word "may" as mandatory.

After listing the people who "may" collect urine, the regulation states that "[t]he officer, agency employee or nurse shall be of the same sex as the subject undergoing testing." If the Department had intended for the list of individuals in the first sentence to be nonexhaustive, the Department would have phrased the next sentence differently, *e.g.*, "the individual who collects the urine shall be of the same sex as the subject undergoing testing." Explicitly naming in the second sentence only those individuals identified in the first sentence evinces the Department's intent that only "the arresting officer, another law enforcement officer, an agency employee, or a hospital nurse" be allowed to collect urine. Since phlebotomists are not authorized by the regulation to collect urine, the State did not strictly comply with section 1286.330(b).

### B. Substantial Compliance With Regulation

■ The admissibility of test results is conditioned on compliance with section 11—501.2(a) and the regulations promulgated thereunder.

*People v. Fonner*, 385 Ill. App. 3d 531, 543, 898 N.E.2d 646, 656 (2008); *Van Bellehem*, 389 Ill. App. 3d at 1133, 907 N.E.2d at 925. Failure to comply with section 11—501.2 and its regulations renders the results of the test unreliable. *People v. Hamilton*, 118 Ill. 2d 153, 160, 514 N.E.2d 965, 969 (1987). However, the State may rebut the presumption of unreliability with proof that the test results were valid even though there was not strict compliance with the regulations. See *People v. Bishop*, 354 Ill. App. 3d 549, 556, 821 N.E.2d 677, 684 (2004).[1] Substantial compliance will be found where the deviation neither affects the reliability of the test nor prejudices the defendant. *Bishop*, 354 Ill. App. 3d at 556, 821 N.E.2d at 684-85.

Here, defendant established that the State did not strictly comply with the regulation, but the trial court never considered whether the State substantially complied with the regulation. Thus, we reverse and remand. On remand, the State may rebut the presumption of unreliability with proof that the test results were valid even though the State did not strictly comply with section 1286.330(b).

## CONCLUSION

The order of the La Salle County circuit court is reversed and remanded.

Reversed and remanded.

HOLDRIDGE, P.J., concurs.

JUSTICE WRIGHT, dissenting:

The majority correctly notes that administrative regulations are valid only to the extent that they do not conflict with the provisions of the statute authoring the regulations. Then, the majority concludes that the drafters of section 1286.330(b) intended to limit the category or persons authorized to collect urine for purposes of future forensic analysis to a finite group, including only the arresting officer, another law enforcement officer, an agency employee, or a nurse. However, the

---

[1]Courts in other states have agreed that substantial compliance with administrative regulations governing alcohol testing is sufficient to make the test results admissible in DUI prosecutions. See, *e.g.*, *State v. Burnside*, 100 Ohio St. 3d 152, 159, 2003—Ohio—5372, at ¶34; *Wester v. State*, 528 P.2d 1179, 1184 (Alaska 1974); *Henry v. Commonwealth*, 44 Va. App. 702, 708, 607 S.E.2d 140, 142 (2005); *Department of Highway Safety & Motor Vehicles v. Dehart*, 799 So. 2d 1079, 1080 (Fla. App. 2001); *Potts v. State*, 22 S.W.3d 226, 232 (Mo. App. 2000); *Caffey v. State*, 43 Ark. App. 160, 163, 862 S.W.2d 293, 295 (1993).

majority's thoughtful analysis overlooks the fact that this construction causes the regulation to conflict with the statute authorizing the very regulations at issue in this appeal.

Specifically, section 11—501.2 of the Code restricts the authorization to collect blood from a driver to the following finite categories of persons: a licensed physician, a registered nurse, a trained phlebotomist, a certified paramedic, or other qualified person approved by the State Police. I note that the statute expressly *excludes* these "limitation[s]" with regard to persons allowed to collect urine. The statute provides: "This limitation shall not apply to the taking of breath or urine specimens." 625 ILCS 5/11—501.2 (West 2006).

If the statute would allow, but not limit, urine and breath samples to be collected by "a licensed physician, a registered nurse, a trained phlebotomist, a certified paramedic, or other qualified person approved by the State Police," the majority's view that urine collected by a phlebotomist is improper does not follow the language of the statute. The majority's construction places limitation on those persons allowed to collect breath and urine which in my view were not intended by the statute itself.

Consequently, I conclude that the intent of section 1286.330(b) of title 20 of the Administrative Code must be construed to allow for the collection of urine by persons who "may" include, but would not be limited to, the arresting officer, another law enforcement officer, an agency employee, or nurse. I suggest "may" is permissive. I agree, however, that the gender of the person collecting the urine and the person providing the urine sample is a mandatory requirement providing that the gender "shall" be the same.

For these reasons, I respectfully dissent and would simply reverse the lower court's ruling without remand.